NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
DANIEL A. BECK (Cal. Bar No. 204496)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-2574
     Facsimile: (213) 894-7819
     E-mail: daniel.beck@usdoj.gov

Attorneys for Defendants Randall Devine
And the United States of America

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HOBBS,<br><br>       Plaintiff,<br><br>       v.<br><br>RANDALL DEVINE, *an individual*;<br>THE UNITED STATES OF<br>AMERICA; AND DOE<br>DEFENDANTS 1-50,<br><br>       Defendants. | No. 2:18-cv-0480 PSG (Ex)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS BY DEFENDANTS RANDALL DEVINE AND THE UNITED STATES OF AMERICA**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:   September 24, 2018<br>Hearing Time:   1:30 p.m.<br>Ctrm:          6A, in First Street<br>              Courthouse<br>Hon.           Philip S. Gutierrez |

# <u>TABLE OF CONTENTS</u>

<u>DESCRIPTION</u>                                                                      <u>PAGE</u>

NOTICE OF MOTION AND MOTION TO DISMISS .................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ............................................................................................... 1

II.     LEGAL STANDARDS ....................................................................................... 2

        A.      Rule 12(b)(1) Standard ............................................................................ 2

        B.      Rule 12(b)(6) Standard ............................................................................ 3

III.    THE ALLEGATIONS OF PLAINTIFF HOBBS' COMPLAINT AND ITS
        FOUR TORT CLAIMS ...................................................................................... 4

        A.      The Four Tort Claims, The Two Named Defendants, And The
                Unspecified Anonymous Defendants ...................................................... 4

        B.      2013—The Sex Crimes in Pattaya ........................................................ 4

        C.      2014—The Royal Thai Police File Criminal Charges Against Hobbs ........ 5

        D.      2015—Hobbs Files Multiple Civil Actions in Thailand, and the Thai
                Criminal Charges Against Him Are Dropped ........................................ 6

        E.      2016—Hobbs' Administrative Tort Claims ........................................... 6

        F.      2018—Hobbs' Complaint in this Court ................................................. 6

IV.     HOBBS' GRIEVANCES ARE NOT ACTIONABLE AS BIVENS
        CLAIMS AGAINST SPECIAL AGENT RANDALL DEVINE ..................... 6

        A.      Plaintiff Hobbs' Claims Arise In A New Bivens Context ...................... 7

        B.      Several Special Factors Weigh Strongly Against Creating An Implied
                Bivens Remedy In The New Context Of Plaintiff Hobbs' Claims ............. 11

                1.      Alternative Remedies Were Available for Hobbs' Grievances ........ 11

                2.      Congressional Legislation Bars Tort Liability For Injuries That
                        Federal Agents Cause Outside Of The United States. .................... 13

                3.      Hobbs' Claims Raise Foreign Policy Concerns ........................... 15

V.      THE FOREIGN COUNTRY EXCEPTION OF 28 U.S.C. § 2680(k) BARS
        HOBBS' TORT CLAIMS AGAINST THE UNITED STATES BECAUSE
        THE ALLEGED INJURIES OCCURRED IN THAILAND ........................... 17

VI.     THE LIBEL AND SLANDER EXCEPTION OF 28 U.S.C. § 2680(h)
        BARS HOBBS' LIBEL, SLANDER, AND DEFAMATION CLAIM
        AGAINST THE UNITED STATES ................................................................ 20

i

## <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                                    <u>PAGE</u>

VII.   CONCLUSION..................................................................................................20

1

## **TABLE OF AUTHORITIES**

DESCRIPTION                                                                                    PAGE

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937 (2009)............................................................3, 6

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................3, 5, 6

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
    403 U.S. 388 (1971)................................................................................1, 11

Bush v. Lucas,
    462 U.S. 367 (1983)....................................................................................12

Carlson v. Green,
    446 U.S. 14 (1980).......................................................................................11

Conyers v. U.S. Fish and Wildlife Service,
    572 Fed. Appx. 842......................................................................................16

Free v. Peikar,
    2018 WL 905388 (E.D. Cal. Feb. 15, 2018)...............................................13

Freeman v. City of Santa Ana,
    68 F.3d 1180 (9th Cir. 1995) ......................................................................16

Gartner v. S.E.C.,
    913 F. Supp. 1372 (C.D. Cal. 1995) ...........................................................20

Gonzalez v. Hasty,
    269 F. Supp. 3d 45 (E.D.N.Y. 2017) ..........................................................12

Harbury v. Hayden,
    522 F.3d 413 (D.C. Cir. 2008).....................................................................19

Hernandez v. Mesa,
    885 F.3d 811 (5th Cir. 2018) ...............................................................passim

Hernandez v. U.S.,
  757 F.3d 249 (5th Cir. 2014) ......................................................................9

Hernandez v. U.S.,
  771 F.3d 818 (5th Cir. 2014) ......................................................................9

Hernandez v. U.S.,
  785 F.3d 117 (5th Cir. 2015) ......................................................................9

Hernandez v. U.S.,
  802 F. Supp. 2d 834 (W.D. Tex. 2011) .......................................................9

Kokkonen v. Guardian Life Ins. Co. of America,
  511 U.S. 375 (1994).....................................................................................2

Lacey v. Maricopa County,
  693 F.3d 896 (9th Cir. 2012) ....................................................................16

Louisiana Mun. Police Employees' Retirement System v. Wynn,
  829 F.3d 1048 (9th Cir. 2016) ..................................................................19

Meshal v. Higgenbotham,
  804 F.3d 417 (D.C. Cir. 2015)......................................................10, 14, 15

Morrow v. United States,
  723 F. Supp. 2d 71 (D.D.C. 2010)..............................................................7

Safe Air for Everyone v. Meyer,
  373 F.3d 1035 (9th Cir. 2004) ................................................................2, 3

Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.,
  343 F.3d 1036 (9th Cir. 2003) ....................................................................3

Sosa v. Alvarez-Machain,
  542 U.S. 692 (2004).............................................................................17, 18

United States v. Hernandez,
  137 S. Ct. 2003 (2017).................................................................................9

United States v. Smith,
  499 U.S. 160 (1991).....................................................................................1

<u>Vance v. Rumsfeld,</u>

   801 F.3d 193 (7th Cir. 2012) ...................................................................14

<u>White v. Lee,</u>

   227 F.3d 1214 (9th Cir. 2000) .............................................................2, 3

<u>Wood v. Moss,</u>

   134 S. Ct. 2056 (2014) ............................................................................9

<u>Ziglar v. Abbasi,</u>

   137 S. Ct. 1843 (2017)......................................................................passim

**Statutes**

28 U.S.C. § 2680.............................................................................................18

28 U.S.C. § 2680(h) ..........................................................................i, vi, 1, 20

28 U.S.C. § 2680(k) ...................................................................................passim

**Rules**

Fed. R. Civ. P. 12(b)(1)..............................................................................vi, 2

Fed. R. Civ. P. 12(b)(6)..................................................................................3

v

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

PLEASE TAKE NOTICE that on September 24, 2018, or as soon thereafter as they may be heard, defendants Randall Devine and the United States of America will, and hereby do, move this Court pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for an order dismissing the claims asserted in the Complaint that plaintiff Christopher Hobbs filed on January 18, 2018 [Dkt. No. 1]. This motion will be made in the First Street Courthouse, before the Honorable Philip S. Gutierrez, United States District Judge, located at 350 West First Street, Courtroom 6A, Los Angeles, California 90012.

Defendant Devine moves to dismiss Plaintiff's constitutional tort claims on the grounds that Plaintiff's Complaint does not state an actionable <u>Bivens</u> claim pursuant to the Supreme Court's delineation of <u>Bivens</u> liability in <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843 (2017). The United States moves to dismiss the Plaintiff's California-law tort claims on the grounds that 28 U.S.C. § 2680(k) bars Federal Tort Claims Act liability for injuries sustained outside of the United States. The United States further moves to dismiss Plaintiff's California-law claim for libel/slander/defamation on the grounds that 28 U.S.C. § 2680(h) bars FTCA liability for "[a]ny claim arising out of" libel or slander.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

/ / /

/ / /

vi

1    This motion is made following the conference of counsel pursuant to Local Rule

2  7-3 which took place on May 31, 2018.

3

4   Dated: July 13, 2018                    Respectfully submitted,

5                                           NICOLA T. HANNA
                                            United States Attorney
6                                           DAVID M. HARRIS
                                            Assistant United States Attorney
7                                           Chief, Civil Division
                                            JOANNE S. OSINOFF
8                                           Assistant United States Attorney
                                            Chief, General Civil Section
9
                                              /s/ Daniel A. Beck
10                                          _____
                                            DANIEL A. BECK
11                                          Assistant United States Attorney

12                                          Attorneys for Defendants Randall Devine
                                            And the United States of America
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      vii

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This case, based on alleged extraterritorial injuries, does not belong in this Court. Plaintiff Hobbs' Complaint [Dkt No. 1] asserts (1) two constitutional tort claims against individual defendant Randall Devine and (2) two state law tort claims against the United States. As the basis for those claims, Hobbs alleges that Devine—an FBI Special Agent—instigated the Royal Thai Police's prosecution of Hobbs back in 2014 on false charges of engaging in sex with a Thai minor. The Royal Thai Police ended their prosecution in August of 2015, and Hobbs now seeks to recover tort damages in this Court for his allegedly wrongful arrest and prosecution in Thailand.

Insofar as the Complaint attempts to assert two constitutional tort claims against an individual federal agent, Randall Devine, those claims are asserted pursuant to the implied tort liability theory of <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). These two claims should, consequently, be dismissed pursuant to the Supreme Court's holding of <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843 (2017). Neither of Hobbs' constitutional tort claims involves a <u>Bivens</u> context that the Supreme Court has previously approved, and several special factors weigh strongly against judicially expanding <u>Bivens</u> liability to the new extraterritorial context of this case.

Insofar as the Complaint also attempts to assert two California-law tort claims, the United States has exercised its right to be substituted as the defendant for those claims. [Dkt. No. 19]. These two California-law claims should now be dismissed because 28 U.S.C. § 2680(k) bars imposing tort liability against the United States for injuries sustained abroad. <u>See</u> <u>United States v. Smith</u>, 499 U.S. 160, 166 (1991) (noting that Section 2680(k) precludes liability, "Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether."). Likewise, there is no jurisdiction for maintaining tort claims against the United States when those claims "aris[e] out of" libel or slander, as with Hobbs' fourth claim. <u>See</u> 28 U.S.C. § 2680(h).

1

Hobbs has already pursued his legal remedies, at length, in Thailand. Hobbs alleges that in 2015 he filed three civil suits in Thailand, charging the Royal Thai Police and a Thai prosecutorial witness with misconduct in his alleged false arrest and unlawful prosecution. (Complaint ¶¶ 36, 65, 70(d), 70(f)). The Complaint does not relate the status or disposition of Hobbs' civil suits in Thailand,[1] but this attempt at bringing a fourth suit in California district court, years later, was not required for his underlying claims to be heard. Nor, given that most witnesses are Thai citizens, would this be a feasible forum.

Because these legal defects in his case are fatal and cannot be cured, Hobbs' Complaint should be dismissed with prejudice.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1) Standard

Federal courts are court of limited jurisdiction, possessing "only that power authorized by Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994). "It is presumed that a cause lies outside of this limited jurisdiction …, and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Id.</u> (citations omitted).

A challenge to subject matter jurisdiction is properly decided under Fed. R. Civ. P. 12(b)(1), and may be asserted as either a facial or factual challenge. See <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Id.</u> "In resolving a factual attack on jurisdiction, the district court may

---

[1]     According to an article published in the Bangkok Post on November 10, 2015, these Thailand cases were dismissed; presumably that dismissal was due to prosecutorial immunity and witness immunity under Thai law. Although not germane to deciding this motion, defendants note that this article also contravenes the Complaint's allegation that Hobbs did not know until much later that Devine was an FBI agent who was investigating him. <u>See</u> www.bangkokpost.com/print/725692/.

2

1  review evidence beyond the complaint without converting the motion to dismiss into a

2  motion for summary judgment." Id. "[The court] also need not presume the truthfulness

3  of the plaintiffs' allegations." White, 227 F.3d at 1242. "Once the moving party has

4  converted the motion to dismiss into a factual motion by presenting affidavits or other

5  evidence properly brought before the court, the party opposing the motion must furnish

6  affidavits or other evidence necessary to satisfy its burden of establishing subject matter

7  jurisdiction." Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343

8  F.3d 1036, 1039 n. 2 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004).

9      **B.   Rule 12(b)(6) Standard**

10      A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. "While a

11  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

12  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

13  requires more than labels and conclusions, and a formulaic recitation of the elements of a

14  cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

15  (citations omitted). Rather, the allegations of the complaint "must be enough to raise a

16  right to relief above the speculative level." Id. To survive a motion to dismiss, a plaintiff

17  must allege "enough facts to state a claim to relief that is plausible on its face."

18  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949

19  (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks

20  for more than a sheer possibility that a defendant has acted unlawfully. Where a

21  complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops

22  short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556

23  U.S. at 678 (quoting Twombly, 550 U.S. at 556).

24

25

26

27

28

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   THE ALLEGATIONS OF PLAINTIFF HOBBS' COMPLAINT AND ITS FOUR TORT CLAIMS

### A.   The Four Tort Claims, The Two Named Defendants, And The Unspecified Anonymous Defendants

The essence of Hobbs' Complaint is that Thai and American authorities knew another man—Steven James Strike—had committed certain sexual crimes in Thailand in 2013, but these authorities nonetheless prosecuted Hobbs for those crimes. Seeking to recover tort damages for his Thailand arrest and prosecution, the Complaint asserts two Bivens claims against Devine, an individual FBI Special Agent:[2]

1.   Fourth and Fourteen Amendment Right Against Malicious Prosecution

2.   Fourth and Fourteen Amendment Right Against Unreasonable Detention and False Arrest

And the Complaint asserts two California law tort claims against the United States:[3]

3.   Intentional Infliction of Emotional Distress

4.   Libel, Slander and Defamation

The Complaint's repeated references to unspecified collective "Defendants" evidently includes the Anti Human Trafficking and Child Abuse Center in Thailand (an NGO) and its director Parison Noja, a Thai national who Hobbs brought an unsuccessful civil suit against in Thailand. See Complaint ¶¶ 25, 35, 37, 39.

### B.   2013—The Sex Crimes in Pattaya

Hobbs' narrative begins with a partnership that he formed in Pattaya. Id. ¶¶ 21-23. Hobbs owned a van that was normally parked at Clark's residence in Pattaya, where Clark had rented the residence's second floor to a third man, Steven James Strike.

At some point in 2013, Hobbs claims that the Defendants "directly or indirectly" solicited a fourteen year old Thai boy to engage in sexual relations with suspected

---

[2]   See Complaint pp. 17-19.
[3]   See Complaint pp. 19-20. The United States has been substituted as the defendant for these two California-law tort claims, replacing Devine [Dkt. No. 19], but the underlying allegations remain the same as when Devine was the named defendant.

4

pedophiles. Id. ¶ 24. The Defendants allegedly directed this boy to have sex with Strike and report back to them. Id. ¶¶ 25-27. The boy identified Clark's residence as where he was taken for the sex acts. The Defendants allegedly assumed that Hobbs resided there, with his van, and so he was the guilty man. Id.

In October of 2013, the Defendants allegedly learned that the Thai boy had actually had sex with Strike, not Hobbs. Id. ¶ 31. The Defendants allegedly instructed Thai Immigration Police to arrest Strike and deport him to Hawaii. Id. ¶ 32. Allegedly, the Defendants somehow concealed Strike's arrest and deportation from the Pattaya police at this time, even though Hobbs alleges that Strike was arrested and deported by the Thai police.[4] Id. ¶ 33.

### C.    2014—The Royal Thai Police File Criminal Charges Against Hobbs

In December of 2013, Hobbs claims that the "Defendants" falsely informed Pattaya police that Hobbs had engaged in pedophilia at the Pattaya address. Id. Hobbs claims that the Defendants accused him because they wanted to conceal their direction of a minor to engage in unlawful sex, as well as their negligent investigation.[5] Id. ¶ 34.

On June 8, 2014, the Royal Thai Police arrested Hobbs. Id. ¶ 8. Devine interrogated Hobbs that same day, and allegedly told him that he was merely acting as a "consultant to Plaintiff," working with the American Embassy to protect Hobbs.[6] Id. ¶ 10. Hobbs alleges that "Defendants invited the local media to view the arrest and interrogation by Defendant Devine and others, of Plaintiff Hobbs and, as a result, his

---

[4]    Far from being kept 'secret,' Strike's arrest and deportation to Hawaii was openly reported by news media at this time, e.g. a December 12, 2013 article: http://www.hawaiinewsnow.com/story/24208859/maui-man-charged-with-sexually-assaulting-minor-found-in-thailand.

[5]    It should be emphasized that this cover-up theory makes no sense. Instigating a new Royal Thai Police prosecution of the Pattaya sexual crimes would accomplish the exact opposite function—it would bring new attention onto what had happened.

[6]    In reality, Hobbs has posted numerous articles and documents on the Internet in which he asserts that Devine was an FBI agent who read him his Miranda rights at the start of their June 8, 2014 interview. See, e.g., www.bangkokpost/com/print/725692. The Complaint's contrary allegations reflect Hobbs' effort to plead his way around the statutes of limitation, which facially bar his belated civil lawsuit in this Court.

image was broadcasted across all Thai national television and other media."[7] Id. ¶ 17. He further claims that the Defendants made defamatory statements in Thai news media. Id. ¶¶ 93-94. Hobbs does not identify any allegedly defamatory statements, however.

### D.   2015—Hobbs Files Multiple Civil Actions in Thailand, and the Thai Criminal Charges Against Him Are Dropped

By February 12, 2015, Hobbs had filed a civil lawsuit in Thailand against the Royal Thai Police. Id. ¶ 50. On March 17, 2015, Hobbs filed a second civil lawsuit against "cooperative witness Parison Noja." Id. ¶ 70(d). On June 4, 2015, Hobbs filed yet another civil action against the Royal Thai Police. Id. ¶ 70(f).

On August 6, 2015, the Defendants allegedly approved the Thai Attorney General's issuance of a final non-prosecution order against Hobbs. Id. ¶ 55.

### E.   2016—Hobbs' Administrative Tort Claims

Hobbs claims that in April of 2016 he learned that Special Agent Devine "had orchestrated the arrest and both provided false information to the RTP and instructed RTP to prosecute Plaintiff, and did so with knowledge that Plaintiff was factually innocent as to the allegations against Plaintiff." Id. ¶ 11. Hobbs filed SF 95 claims around May 21, 2016. Id. ¶ 68. He claims that he filed a revised SF 95 claim around September 9, 2016, which was denied by a DOJ letter dated July 24, 2017. Id.

### F.   2018—Hobbs' Complaint in this Court

On January 18, 2018, Hobbs filed his Complaint [Dkt. No. 1].

## IV.   HOBBS' GRIEVANCES ARE NOT ACTIONABLE AS BIVENS CLAIMS AGAINST SPECIAL AGENT RANDALL DEVINE

The Supreme Court disfavors implied causes of action like Bivens, and has narrowly limited the scope of Bivens liability. See Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to

---

[7]   The Complaint does not explain how Hobbs' complaints about this media publicizing of his interrogation by Devine and other FBI agents on June 8, 2014 can be squared with Hobbs' contradictory allegation that, until April of 2016, he believed that Devine was merely his 'consultant,' who was working to help him.

6

1    extend <u>Bivens</u> liability 'to any new context or new category of defendants.'"). A motion

2    to dismiss pursuant to Rule 12(b)(6) is a proper way to challenge whether a <u>Bivens</u>

3    remedy exists. <u>See</u> <u>Morrow v. United States</u>, 723 F. Supp. 2d 71, 78 (D.D.C. 2010).

4         The narrow scope of <u>Bivens</u> claims was recently affirmed in <u>Ziglar v. Abbasi</u>, 137

5    S. Ct. 1843 (2017), where the Supreme Court delineated the specific circumstances

6    under which <u>Bivens</u> claims may be asserted against individual federal employees. In

7    rejecting the <u>Abbasi</u> plaintiffs' attempt to assert tort claims premised on allegedly-

8    unconstitutional detention policies, the Supreme Court noted that it had only approved

9    three types of <u>Bivens</u> liability, and had otherwise refused to extend <u>Bivens</u> to any new

10   context or category of defendant "for the past 30 years." <u>Id.</u>, at 1857.

11        <u>Abbasi</u> sets forth a two-part test to determine whether a <u>Bivens</u> claim may

12   proceed. A district court must first consider whether the claim presents a new context

13   from the three specific contexts that the Supreme Court has previously authorized. If so,

14   the court must then apply a "special factors" analysis to determine whether "special

15   factors counsel hesitation" in expanding <u>Bivens</u> absent affirmative action by Congress.

16   <u>Abbasi</u>, 551 U.S. at 1857, 1875.

17        **A.    Plaintiff Hobbs' Claims Arise In A New <u>Bivens</u> Context**

18        The court must first determine whether the asserted claim involves a "new

19   context" by comparing it to the three specific <u>Bivens</u> claims that the Supreme Court has

20   previously authorized. <u>See</u> 137 S. Ct. at 1859-60. The <u>Abbasi</u> decision thus examined the

21   plaintiff's claims regarding the government's detention of aliens, and found that they

22   involved a new <u>Bivens</u> context because "[t]hose claims bear little resemblance to the

23   three <u>Bivens</u> claims the Court has approved in the past: a claim against FBI agents for

24   handcuffing a man in his own home without a warrant; a claim against a Congressman

25   for firing his female secretary; and a claim against prison officials for failure to treat an

26   inmate's asthma." <u>Id.</u> at 1860. Relative to those three claims, <u>Abbasi</u> discusses when

27   differences are meaningful enough to make a context new, which may include:

28

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Id.</u> at 1859-60. Even relatively minor differences are sufficient:

> Yet even a modest extension is still an extension. And this case does seek to extend <u>Carlson</u> to a new context. As noted above, a case can present a new context for <u>Bivens</u> purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous <u>Bivens</u> cases.

<u>Id.</u> at 1864. Here, Hobbs' constitutional tort claims against Devine bear no resemblance to the claims in <u>Davis</u> (5th Amendment gender discrimination) or <u>Carlson</u> (8th Amendment medical indifference). The <u>Bivens</u> decision itself involved the Fourth Amendment right against unreasonable searches and seizures, but as the Supreme Court has described <u>Bivens</u>, it involved "a claim against FBI agents for handcuffing a man in his own home without a warrant." <u>Abbasi</u>, 137 S. Ct. at 1860. No malicious prosecution claim or arrest warrant was involved.

In contrast to <u>Bivens</u>, Hobbs' Complaint does not involve FBI agents bursting into his home and handcuffing him without a warrant. Instead, Hobbs claims that his Fourth and Fourteenth Amendment rights were violated because the collective Defendants, including Devine, gave false information and unjustified directives that caused his *arrest, detention, and criminal prosecution by the Royal Thai Police*. The liability theory is indirect. Unlike <u>Bivens</u>, Hobbs' Complaint attacks a coalition of shadowy "Defendants" who allegedly controlled various Thai agents and witnesses, including Thai police and Thai prosecutors. The investigation, arrest, prosecution, detention, and media publicizing of the case was conducted by a variety of foreign nationals and entities, acting pursuant to foreign law.

8

The lead case on whether an attempted extraterritorial application of American constitutional law raises a 'new context' for Bivens claims pursuant to Abbasi's dictates is the Fifth Circuit's recent ruling in Hernandez v. Mesa, 885 F.3d 811 (5th Cir. 2018) (*en banc*). In Hernandez, a 15-year old Mexican boy was shot and killed from across the border by a U.S. Border Patrol agent. The boy's parents filed Bivens claims against the agent, alleging that the shooting violated the Fourth and Fifth Amendments. The district court dismissed both claims.[8] On review, the Fifth Circuit affirmed dismissal of the Fourth Amendment claim, but held that the shooting violated the Fifth Amendment, and the officer was not entitled to qualified immunity.[9] On rehearing *en banc*, the Fifth Circuit affirmed dismissal of both Bivens claims, finding there was no Fourth Amendment violation, and even if there was a Fifth Amendment violation, the claim was barred by qualified immunity.[10]

The Supreme Court vacated and remanded. See United States v. Hernandez, 137 S. Ct. 2003 (2017). The Supreme Court's opinion opened by stating "[t]he Court turns first to the Bivens question, which is 'antecedent' to the other questions presented." Id. at 2006 (citing Wood v. Moss, 134 S. Ct. 2056, 2066 (2014)). Citing Abbasi, the Supreme Court held that the Fifth Circuit must decide how it applies to the plaintiffs' Bivens claims. The Supreme Court held that it would be "imprudent" to decide whether a Fourth Amendment violation had occurred, rather than *first* determining whether a Bivens claim would even be available for such a violation. Id. at 2007. The Supreme Court likewise found that the Fifth Amendment claim also required such a threshold Abbasi analysis. Id.

Conducting that required threshold Abbasi analysis on remand, the Fifth Circuit determined that neither the Fourth or Fifth Amendment claim—regardless of whether the alleged constitutional violation had actually occurred—could be brought as a Bivens

---

[8]    Hernandez v. U.S., 802 F. Supp. 2d 834 (W.D. Tex. 2011).
[9]    See Hernandez v. U.S., 757 F.3d 249, 267 (5th Cir. 2014);
[10]   Hernandez v. U.S., 771 F.3d 818 (5th Cir. 2014) (en banc); and Hernandez v. U.S., 785 F.3d 117 (5th Cir. 2015).

claim against the Border Patrol agent. See 885 F.3d at 814-24. The Fifth Circuit's

reasoning, which is largely dispositive of the parallel Bivens issues here, was as follows:

> We hold that this is not a garden variety excessive force case against a federal law enforcement officer. The transnational aspect of the facts presents a 'new context' under Bivens, and numerous 'special factors' counsel against federal courts' interference with the Executive and Legislative branches of the federal government.

Id. at 814. The Fifth Circuit's *en banc* holding in Hernandez closely parallels the pre-

Abbasi decision of Meshal v. Higgenbotham, 804 F.3d 417 (D.C. Cir. 2015). Meshal

involved Bivens claims that a U.S. citizen had filed against several FBI agents, alleging

that these agents violated his Fourth and Fifth Amendment rights when they detained,

interrogated, and tortured him over several months in three African countries while

conducting a terrorism investigation. The D.C. Circuit noted that "while Bivens

remedies for ill-executed criminal investigations are common, extraterritorial

application is virtually unknown." Id. at 418.

Here, Hobbs' attempted Bivens claims against Devine involve (1) complex issues

of foreign law; (2) novel attempts at the extraterritorial application of American

constitutional law; and (3) extraordinary allegations about the supposed subordination of

Thai police and prosecutorial authorities to the FBI when arresting and prosecuting

Hobbs in Thailand. Thai investigations, arrests, and prosecutions are not required to

conform to the U.S. Constitution. If there was no prosecutorial wrong under Thai law

(indeed Hobbs' two civil actions against the Thai police were evidently dismissed), then

Hobbs' arrest and prosecution cannot be treated as if they had instead constructively

taken place within the United States, under its criminal and constitutional laws.

The bottom line is that Hobbs' claims against Special Agent Devine plainly

involve a new Bivens context relative to the three specific contexts that the Supreme

Court previously approved in Bivens, Carlson, and Davis v. Passman. The test that

Abbasi delineates for whether there is a new Bivens context is easily satisfied, and this

case is new and unusual in many respects relative to the facts and law of Bivens itself.

The Court must therefore analyze whether it should create an extended form of implied constitutional tort liability against Special Agent Devine pursuant to the framework delineated in Abbasi.

**B.    Several Special Factors Weigh Strongly Against Creating An Implied Bivens Remedy In The New Context Of Plaintiff Hobbs' Claims**

Once a district court determines that a Bivens claim arises in a new context, as the second step, the court must examine whether 'special factors' counsel hesitation in creating a new Bivens remedy. "The Court's precedents now make clear that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S. Ct. at 1857.[11] Abbasi clarifies what such 'special factors' are:

> This Court has not defined the phrase "special factors counselling hesitation." The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative."

Id., 1857-58.

**1.    Alternative Remedies Were Available for Hobbs' Grievances**

One important factor that weighs against creating new types of Bivens liability is whether alternative methods of seeking relief existed relative to the harm. As the Supreme Court has explained, "[W]hen alternative methods of relief are available, a Bivens remedy usually is not." Abbasi, 137 S. Ct. at 1863. Because of the unusual extraterritorial facts of this case, the alternative remedial processes available within Thailand predominate here, both via Thai criminal law and Thai civil law.

For criminal remedies, Hobbs had the normal remedial processes provided by the Thai criminal law system. He alleges only a three-day detention in Thai prison

---

[11]    Quoting Carlson v. Green, 446 U.S. 14, 18 (1980), which in turn is quoting Bivens, 403 U.S. at 396.

(Complaint, ¶ 57(h)). He alleges that the criminal charges against him were dropped, without a trial or conviction. Id. ¶ 55. Bivens liability was not required to prevent a prolonged detention or false conviction. Cf. Abbasi, 137 S. Ct. at 1862-63 (citing the availability of injunctive relief and habeas petitions for its detained plaintiffs).

For civil remedies, Hobbs alleges that in 2015 he filed three civil suits in Thailand seeking to recover damages for his alleged false arrest and malicious prosecution—two suits against the Royal Thai Police, and one suit against a prosecutorial witness, Parison Noja. See Complaint, ¶¶ 50, 65, 70(d), 70(f). While Hobbs presumably did not prevail in any of his three Thailand civil suits (his Complaint does not say), the availability of alternative remedial processes does not turn on whether the plaintiff actually succeeds. Far from guaranteeing the plaintiff success in his claims, alternative remedial processes may preclude extending Bivens liability to a new context when they do not offer any form of monetary relief, even for claims that are found to be meritorious:

> Of course, administrative procedures or a habeas petition provides no avenue for monetary recovery, unlike a Bivens action. But there is no precedent suggesting that the unavailability of money is a factor that carries any weight in determining the expansion of a Bivens remedy. Rather, the emphasis is simply on the existence of an avenue to protect the right, not the method of protection that Congress or the Executive has chosen.

Gonzalez v. Hasty, 269 F. Supp. 3d 45, 61-62 (E.D.N.Y. 2017). Compare Bush v. Lucas, 462 U.S. 367 (1983), where the Supreme Court declined to recognize a First Amendment retaliation claim under Bivens because the Civil Service Commission administered a non-monetary statutory review process that could address the claim.

Finally, in addition to his three Thai civil suits, Hobbs alleges that "Plaintiff also filed a Federal Tort Claims Act claim, commencing the administrative process. Plaintiff submitted his Standard Form 95 around May 21, 2016." Complaint, ¶ 68. He alleges that his claims were denied on May 27, 2017. Hobbs' Complaint explains that "he will not be asserting a claim under the FTCA" (id.), but to the extent that Congress intended to provide a statutory monetary remedy for foreign torts committed by agents of the federal

12

government, Hobbs had that alternative remedial process available, and for some time he pursued it. Cf. Free v. Peikar, 2018 WL 905388 (E.D. Cal. Feb. 15, 2018) (alternative remedies were available, including FTCA, precluding Bivens claim).

Hobbs had alternative processes for seeking relief regarding his grievances—and he vigorously pursued them—as opposed to filing novel Bivens claims in federal district court against Special Agent Devine, several years later.

## 2.   Congressional Legislation Bars Tort Liability For Injuries That Federal Agents Cause Outside Of The United States.

Another special factor militating against creating Bivens liability in a new context is whether Congressional activity indicates that Congress may not want tort liability to be expanded in that new context via judicial implication. "Sometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." Abbasi, 137 S. Ct. at 1858. "If a statute does not evince Congress' intent 'to create the private right of action asserted,' no such action will be created through judicial mandate. Similar caution must be exercised with respect to damages actions implied to enforce the Constitution itself." Id. at 1848 (internal citations omitted). Importantly, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865.

When enacting the Federal Tort Claims Act, Congress created an explicit statutory exception to the federal government's tort liability, barring "Any claim arising in a foreign country." 28 U.S.C. § 2680(k). As discussed in detail below, this extraterritorial exception bars all tort claims for injuries that occur abroad, regardless of whether the alleged torts were committed or directed by federal agents acting from within the United States. Congress manifestly did not want the federal government subjected to such extraterritorial tort claims, because Congress carved out that specific category of tort claims and legislatively barred it. That Congressional intent, as expressed in a *statutory* context, weighs heavily against judicially implying extraterritorial Bivens liability

13

against individual federal agents (like Devine) in a *non-statutory* context. <u>See</u> <u>Hernandez</u>, 885 F.3d at 820 ("Congress's failure to provide a damages remedy in these circumstances is an additional factor counseling hesitation … Relevant statutes confirm that Congress's failure to provide a federal remedy was intentional.").

In <u>Meshal</u>, <u>supra</u>, the D.C. Circuit explained that the plaintiff's <u>Bivens</u> case not only involved national security issues, "it also involves different legal components—the extraterritorial application of constitutional protections. Such a different context requires us to think anew." 804 F.3d at 424. Put simply:

> Meshal downplays the extraterritorial aspect of this case. But the extraterritorial aspect of the case is critical. After all, the presumption against extraterritoriality is a settled principle that the Supreme Court applies even in considering statutory remedies. If Congress had enacted a general tort cause of action applicable to Fourth Amendment violations committed by federal officers (a statutory *Bivens,* so to speak), that cause of action would not apply to torts committed by federal officers abroad absent sufficient indication that Congress meant the statute to apply extraterritorially. Whether the reason for reticence is concern for our sovereignty or respect for other states, extraterritoriality dictates constraint in the absence of clear congressional action.

<u>Id.</u> (internal citations omitted). Indeed "the Supreme Court has never 'created or even favorably mentioned a non-statutory right of action for damages on account of conduct that occurred outside the borders of the United States.'" <u>Id.</u> at 426 (<u>quoting</u> <u>Vance v.</u> <u>Rumsfeld</u>, 801 F.3d 193, 198-99 (7th Cir. 2012)).

In <u>Abbasi</u>, the Supreme Court discussed how Congress's enaction of the Prisoner Litigation Reform Act might suggest that Congress did not want <u>Carlson</u>-type damages remedies to be extended to other types of prisoner mistreatment. <u>See</u> 136 S. Ct. at 1865 (noting that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."). Similarly, 28 U.S.C. § 2680(k) strongly counsels hesitation against judicially extending <u>Bivens</u> liability to encompass Hobbs' claims regarding his Thai criminal arrest and prosecution.

14

### 3.   Hobbs' Claims Raise Foreign Policy Concerns

Another special factor counseling against expanding <u>Bivens</u> liability by judicial implication in the new context of Hobbs' claims is raised by the Complaint's reliance on allegations that various Thai nationals and entities, including the Royal Thai Police and Thai Attorney General, acted as agents controlled by the FBI. <u>See</u> Complaint ¶¶ 41, 44, 51, 55. Such allegations implicate United States foreign policy, insofar as Hobbs claims that the Royal Thai Police and Thailand Attorney General—who ostensibly should operate pursuant to Thai domestic policy and Thai law—were in fact FBI puppets. "Extending <u>Bivens</u> in this context also risks interference with foreign affairs and diplomacy more generally. … [T]he United States government is always responsible to foreign sovereigns when federal officials injure foreign citizens on foreign soil." <u>Hernandez</u>, 885 F.3d at 819. Although <u>Hernandez</u> involved a tort injury caused to a foreign citizen, extending <u>Bivens</u> to encompass a claim based on alleged subversion of Thai government officials by the FBI would similarly raise foreign policy concerns.

"Matters touching on national security and foreign policy fall within an area of executive action where courts hesitate to intrude absent congressional authorization." <u>Meshal</u>, 804 F.3d at 426 (finding that judicial inquiry into such matters would raise separation of powers concerns that precluded extending <u>Bivens</u> liability). Unlike cases where federal officers take direct action against an American citizen (like <u>Bivens</u> itself), Hobbs' claims involve the alleged complicity of a variety of Thai government officials. This issue counsels hesitation. <u>Cf.</u> <u>Hernandez</u>, 885 F.3d at 819-20 ("Extending <u>Bivens</u> in this context also risks interference with foreign affairs and diplomacy more generally.").

Moreover, relative to an ordinary <u>Bivens</u> case, it would be very difficult to conduct discovery into Plaintiff's allegations. <u>See</u> <u>Hernandez</u>, 885 F.3d at 822 ("Extraterritoriality, moreover, involves a host of administrability concerns…"). Even if such discovery could be conducted to some degree, and the Thai-language barrier overcome, it would be difficult, and probably impossible, to depose the Thailand Attorney General and the Royal Thai Police. Without depositions, Hobbs' claims would

1    have to be decided on the basis of speculation about how and why these Thai

2    governmental entities supposedly acted as they did. Thailand is not a signatory to the

3    Hague Evidence Convention, and any depositions of Thai nationals would have to be

4    'voluntary.'[12] It is unlikely that Thai government officials or agents would so volunteer.

5        Relative to criminal prosecutions that are brought within the United States

6    pursuant to American criminal law, this is an extremely unusual case. Hobbs attempts to

7    allege false arrest and malicious prosecution constitutional torts against Devine, while

8    conceding that he was actually arrested and prosecuted by the Royal Thai Police in

9    Thailand under Thai law. To charge Devine with false arrest, Hobbs would be required

10   to show that Devine had "ordered or otherwise procured" his arrest by the Royal Thai

11   Police, and that his arrest was conducted in a way that, despite being extraterritorial and

12   governed by Thai domestic law, actually violated the Fourth Amendment. See Lacey v.

13   Maricopa County, 693 F.3d 896, 918 (9th Cir. 2012) ("To maintain an action for false

14   arrest against Wilenchik, Lacey must plead facts that would show Wilenchik ordered or

15   otherwise procured the arrests and the arrests were without probable cause."). Similarly,

16   to charge Devine with malicious prosecution, Hobbs would be required to allege facts

17   showing "that the defendants prosecuted [him] with malice and without probable cause,

18   and that they did so for the purpose of denying [him] equal protection or another specific

19   constitutional right." Id. (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th

20   Cir. 1995)). Hobbs' malicious prosecution claim would require him to establish that his

21   Thailand prosecution was actually conducted by defendant Devine *for the purpose* of

22   denying him his rights under the United States Constitution, rather than being conducted

23   pursuant to the discretion exercised by Thai prosecuting authorities under Thai law.[13]

24

25   [12]    See https://th.usembassy.gov/u-s-citizen-services/depositions/
     [13]    Hobbs likewise fails to allege that Devine acted with the 'malice' that is required
26   to state a malicious prosecution tort. See Conyers v. U.S. Fish and Wildlife Service, 572
     Fed. Appx. 842, 844 ("Conyers' contention that the filing of charges without probable
27   cause is sufficient to establish malice is incorrect under California law. There must be
     sufficient allegations of either actual hostility or ill will on the part of the defendant, or
28   allegation of an intent to deliberately misuse the legal process for personal gain to
     support a claim for malicious prosecution."). Incompetence is not enough.

Even if one accepted, *arguendo*, that a convoluted FBI-Thai government conspiracy had somehow violated Hobbs' Fourth Amendment rights through the prosecutorial actions of Thai authorities, it would go far beyond the facts of <u>Bivens</u> to *judicially impose tort liability against an individual American citizen*—Randall Devine—as an implied non-statutory tort remedy for that putative constitutional violation.

The Supreme Court has warned that "[i]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating that kind of remedy." <u>Abbasi</u>, 137 S. Ct. at 1848. Here, there are numerous sound reasons for thinking that Congress might doubt—and indeed would outright reject—the efficacy and necessity of the novel <u>Bivens</u> damages remedies that Hobbs seeks. As in <u>Hernandez</u>, "this is not a close case." 885 F.3d at 823 (concluding that "[e]ven before <u>Abbasi</u> clarified the 'special factors' inquiry, we agreed with out sister circuits that '[t]he only relevant threshold—that a factor 'counsels hesitation'—is remarkably low.'").

Accordingly, Hobbs' constitutional claims against Devine should be dismissed as exceeding the scope of <u>Bivens</u> liability authorized by the Supreme Court.

## V. THE FOREIGN COUNTRY EXCEPTION OF 28 U.S.C. § 2680(k) BARS HOBBS' TORT CLAIMS AGAINST THE UNITED STATES BECAUSE THE ALLEGED INJURIES OCCURRED IN THAILAND

The United States has exercised its right to be substituted as the defendant for Hobbs' two California-law tort claims, which the Complaint had originally pled against Devine as an individual [Dkt. No. 19].[14] These claims should now be dismissed because the injuries complained of occurred in Thailand, and so cannot constitute the basis for asserting a tort claim against the United States. <u>See</u> 28 U.S.C. § 2680(k).

---

[14]    Hobbs' contention that California law would govern his tort claims is questionable from a conflict-of-laws standpoint, but that issue need not be resolved when deciding this motion. Cf. <u>Sosa</u>, 542 U.S. at 710 ("In sum, current flexibility in choice-of-law methodology gives no assurance against foreign substantive law if federal courts follow headquarters doctrine to assume jurisdiction over tort claims against the Government for foreign harm.").

The Federal Tort Claims Act waives the United States' sovereign immunity for certain types of tort claims; absent such a statutory waiver, there is no jurisdiction to maintain a tort claim against the United States. Specific statutory exceptions to the FTCA's waiver of sovereign immunity are set forth in 28 U.S.C. § 2680. Among these exceptions is Section 2680(k), the foreign country exception, which provides that the United States does not waive its sovereign immunity for "[a]ny claim arising in a foreign country."

Until the year 2004, some federal courts had held that Section 2680(k) did not bar tort claims where federal agents acting inside the United States *directed and caused* tort injuries outside of the United States, a theory called the "headquarters doctrine." The Supreme Court permanently ended that approach, however, in <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692 (2004). In <u>Sosa</u>, the plaintiff claimed that his false arrest in Mexico was caused by the wrongful directions of DEA agents who were acting from within the United States. He filed an FTCA suit within the Central District of California. The Ninth Circuit held that the United States was indeed liable to the plaintiff under the FTCA for the tort of false arrest under California law. Reversing that decision, however, the Supreme Court held that "Not only does domestic proximate causation under the headquarters doctrine fail to eliminate application of the foreign country exception, but there is good reason to think that Congress understood a claim 'arising in' a foreign country in such a way as to bar application of the headquarters doctrine." 542 U.S. at 705. The Supreme Court unambiguously concluded that "We therefore hold that the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." <u>Id.</u> at 712. The place of *injury* thus controls.

The D.C. Circuit subsequently clarified that this statutory exception to tort liability (1) applies to claims in which the United States is substituted as the defendant in place of individual federal agent defendants; and (2) cannot be pled around by alleging secondary injuries that are derivative of the primary foreign-country injury:

> Because the alleged actions of the individual CIA Defendants were within the scope of their employment, Harbury's claims against the individual CIA Defendants are properly converted into claims against the Government under the FTCA. But Harbury's FTCA claims against the Government fall squarely within the FTCA's exception for claims 'arising in a foreign country.' In particular, Harbury's claims on behalf of her husband's estate arise in Guatemala because he suffered the alleged injuries there. And to the extent Harbury alleges her own emotional injuries in the United States as a result of the death of her husband, those derivative claims similarly arise in Guatemala for purposes of the FTCA because they are based entirely on the injuries her husband suffered there. A plaintiff in Harbury's situation cannot plead around the FTCA's foreign-country exception simply by claiming injuries such as 'emotional distress' that are derivative of the foreign-country injuries at the root of the complaint.

Harbury v. Hayden, 522 F.3d 413, 422–23 (D.C. Cir. 2008) (internal citations omitted)

Hobbs' Complaint alleges two California state-law torts: Intentional infliction of emotional distress (his third claim, Complaint ¶¶ 84-91) and libel, slander, and defamation (his fourth claim, Complaint ¶¶ 92-97). When he suffered these alleged wrongs, Hobbs was a resident of Thailand. As a result of his arrest and prosecution in Thailand, he claims to have relocated from Thailand to Malaysia, and divorced his Thai wife. (Complaint ¶ 59). He complains that his defamation took place in Thailand. (Id. ¶¶ 93-94). This case involves the classic foreign injury that 28 U.S.C. § 2680(k) bars from serving as the basis for a tort claim against the United States.[15] Hobbs' claims against the United States should be dismissed accordingly.

---

[15]    Even if the United States had not exercised its right to be substituted as defendant for Plaintiff's California-law tort claims against Devine, there still would be no jurisdiction for the claims in this Court. Hobbs' Complaint seeks to invoke diversity jurisdiction for his California-law tort claims (id. ¶ 4), but diversity jurisdiction is not available to a U.S. citizen who resides in a foreign nation. See Louisiana Mun. Police Employees' Retirement System v. Wynn, 829 F.3d 1048, 1056-57 (9th Cir. 2016). Here, Hobbs alleges that he is "a resident of Malaysia and a citizen of the United States of America." (Complaint ¶ 1).

## VI.  THE LIBEL AND SLANDER EXCEPTION OF 28 U.S.C. § 2680(h) BARS HOBBS' LIBEL, SLANDER, AND DEFAMATION CLAIM AGAINST THE UNITED STATES

28 U.S.C. § 2680(h) creates an additional statutory exception to the FTCA's waiver of sovereign immunity, barring the assertion against the United States of "any claim arising out of … libel [or] slander". Thus "there is no jurisdiction for FTCA claims of libel and slander." <u>Gartner v. S.E.C.</u>, 913 F. Supp. 1372, 1381 (C.D. Cal. 1995). Hobbs' fourth claim for libel, slander, and defamation against the United States is thus also subject to dismissal on this independent basis.

## VII.  CONCLUSION

Plaintiff Hobbs' Complaint should be dismissed without leave to amend.

Dated: July 13, 2018                    Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

      /s/ *Daniel A. Beck*
DANIEL A. BECK
Assistant United States Attorney

Attorneys for Defendants Randall Devine
And the United States of America

20