NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
DANIEL A. BECK (Cal. Bar No. 204496)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2574
Facsimile: (213) 894-7819
E-mail: daniel.beck@usdoj.gov

Attorneys for Defendants Randall Devine
And the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER HOBBS,<br><br>Plaintiff,<br><br>v.<br><br>RANDALL DEVINE, *an individual*; THE UNITED STATES OF AMERICA; AND DOE DEFENDANTS 1-50,<br><br>Defendants. | No. 2:18-cv-0480 PSG (Ex)<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS RANDALL DEVINE AND THE UNITED STATES OF AMERICA**<br><br>Hearing Date: September 24, 2018<br>Hearing Time: 1:30 p.m.<br>Ctrm: 6A, in First Street Courthouse<br>Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

DESCRIPTION PAGE

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. HOBBS' GRIEVANCES ARE NOT ACTIONABLE AS BIVENS CLAIMS AGAINST SPECIAL AGENT RANDALL DEVINE .......... 3

A. Hobbs' Bivens Claims Patently Arise In A New Context. .......... 3

B. Several Special Factors Weigh Strongly Against Creating An Implied Bivens Remedy In The New Context Of Plaintiff Hobbs' Claims .......... 4

1. Alternative Remedies Were Available for Hobbs' Grievances .......... 4

2. Congressional Legislation Bars Tort Liability For Injuries That Federal Agents Cause Outside Of The United States. .......... 7

3. Hobbs' Claims Raise Foreign Policy Concerns .......... 9

III. THE FOREIGN COUNTRY EXCEPTION OF 28 U.S.C. § 2680(k) BARS HOBBS' TORT CLAIMS AGAINST THE UNITED STATES BECAUSE THE ALLEGED INJURIES OCCURRED IN THAILAND .......... 12

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

Cases

Gonzalez v. Hasty,
269 F. Supp. 3d 45 (E.D.N.Y. 2017) .......... 6

Hernandez,
885 F.3d .......... 11

Meshal v. Higgenbotham,
804 F.3d 417 (D.C. Cir. 2015) .......... 3, 4, 10

Rodriguez v. Swartz, __ F. 3d ___,
2018 WL 3733428 (9th Cir. Aug. 7, 2018) .......... passim

U.S. v. Heller,
625 F.2d 594 (5th Cir. 1980) .......... 9

U.S. v. Rose,
570 F.2d 1358 (9th Cir. 1978) .......... 9

Ziglar v. Abbasi,
137 S. Ct. 1843 (2017) .......... passim

Statutes

28 U.S.C. § 2680(k) .......... i, 8, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Defendants have moved to dismiss Hobbs' claims, which arise from his arrest and criminal prosecution by the Royal Thai Police in the years 2014-15. [Dkt. No. 21].

In opposition, Hobbs does not argue, much less establish, that the United States Supreme Court has previously extended Bivens liability to a similar context. Hobbs' attempt to assert Bivens liability against FBI Special Agent Randall Devine regarding his alleged role in a Thailand criminal prosecution thus patently arises in a "new context," relative to the three specific cases in which the Supreme Court has previously approved implied Bivens liability. See Ziglar v. Abbasi, 137 S. Ct. 1843 (2017).

Hobbs nonetheless argues that this Court should extend implied Bivens liability to the new context of his claims against Agent Devine. In doing so, Hobbs primarily relies on Rodriguez v. Swartz, __ F. 3d ___, 2018 WL 3733428 (9th Cir. Aug. 7, 2018). Prior to Swartz, an extraterritorial application of Bivens liability was essentially unheard of. Hobbs' opposition points out that with Swartz one court has now affirmed that Bivens liability may extend to a federal officer's use of excessive force across the border. But Swartz currently forms the outer limit of extraterritorial Bivens precedent, and its facts and law are radically different from Hobbs' Complaint about his alleged malicious prosecution in Thailand. Those differences highlight why extending Bivens liability to this case would be inappropriate and unwarranted under the Abbasi test.

Swartz involved a U.S. Border Patrol agent who shot and killed a Mexican boy across the border. Nobody else was involved, and nobody else could be sued. The Ninth Circuit held that the agent's use of unreasonable deadly force across the border could form the basis for a Fourth Amendment Bivens claim. In doing so, the Ninth Circuit took pains to distinguish the facts of Swartz from cases that involved more complex and indirect forms of extraterritorial conduct by federal agents.

By contrast, Hobbs's Complaint asserts that he was harmed by concerted action between Thai law enforcement officials, a Thailand Non-Governmental Organization

(NGO), and American FBI agents. Hobbs pursued multiple avenues for legal relief in Thailand. His Complaint alleges that he repeatedly sued the Royal Thai Police, and the Thai NGO. Unlike Swartz, a federal agent was not the only possible defendant.

The legal issues are also very different. Searches, seizures, arrests, and criminal prosecutions conducted in Thailand are not normally required to conform to the U.S. Constitution. Recognizing that foreign law poses a problem, Swartz distinguished cases where searches and seizures occur in a foreign country. See 2018 WL 3733428, at *4. The Ninth Circuit observed that using *deadly force*, by shooting across the border, was different than investigative acts. Id. at *5. In this case, an FBI agent's alleged role in the investigation, arrest, and criminal prosecution of Hobbs in Thailand cannot be treated as though these processes took place only in America, and were unrelated to Thai law.

Hobbs tries to minimize the fact that the key witnesses for his claims could not be deposed, since they are Thai nationals. Hobbs portrays this deficiency as if it were only his problem. But Agent Devine cannot fairly be required to defend a case in which the plaintiff can make up ever-shifting speculative claims about what foreign actors allegedly did, without having full civil discovery protections. Swartz is again different on this point, because there were no intervening actors between the Mexican boy and the border patrol agent, and because Mexico—unlike Thailand—is a party to the Hague Evidence Convention, allowing Mexican nationals to be deposed.

Hobbs' case (1) incontestably involves a new Bivens context; and (2) numerous special factors weigh heavily against extending Bivens liability to that new context. Accordingly, his Bivens claims against Agent Devine should be dismissed. Likewise, Hobbs' FTCA claims for extraterritorial injury should be dismissed, since Hobbs' motion to strike the substitution of the United States is defective for the reasons stated in the Defendants' opposition [Dkt. No. 23]. As these defects in Hobbs' claims cannot be fixed by amendment, the action should be dismissed with prejudice.

## II. HOBBS' GRIEVANCES ARE NOT ACTIONABLE AS BIVENS CLAIMS AGAINST SPECIAL AGENT RANDALL DEVINE

### A. Hobbs' Bivens Claims Patently Arise In A New Context.

As the defendants' moving papers discussed, in assessing whether a Bivens claim is viable, the court must first determine whether the asserted claim involves a "new context" by comparing it to the three specific Bivens claims that the Supreme Court has previously authorized. See Abbasi, 137 S. Ct. at 1859-60. Hobbs's Opposition does not cite any Supreme Court case that has extended Bivens liability to an extraterritorial criminal prosecution, and there is no such case. Hobbs' Complaint thus unquestionably raises a "new context" relative to the three Bivens claims that Abbasi recognized.

Even in Swartz, the Ninth Circuit wasted no time concluding that its Fourth Amendment claim for excessive use of force across the border obviously presented a new Bivens context. As the Ninth Circuit explained, "*Abbasi* makes plain that even though a *Bivens* action lies for some constitutional violations (like the Fourth Amendment claim in *Bivens*), it does not lie for all violations (like the Fourth Amendment claim in *Abbasi*)." 2018 WL 3733428, *9.

Meshal v. Higgenbotham, 804 F.3d 417 (D.C. Cir. 2015) involved Bivens claims that a U.S. citizen had filed against several FBI agents, alleging that these agents violated his Fourth and Fifth Amendment rights when they detained, interrogated, and tortured him over several months in three African countries while conducting a terrorism investigation. The D.C. Circuit noted that "while Bivens remedies for ill-executed criminal investigations are common, extraterritorial application is virtually unknown." Id. at 418. That remains true notwithstanding Swartz, which did not address an allegedly ill-executed criminal investigation in an extraterritorial context.

Hobbs fails to rebut the fact that a Bivens claim for extraterritorial criminal investigation and prosecution has never been approved by the Supreme Court (or, for that matter, by a circuit court, although it is the Supreme Court's guidance in Abbasi that is controlling here). Accordingly, the question becomes whether this Court should create

an implied Bivens remedy in the new context of Hobbs' claims. As discussed in the defendants' moving papers and below, it should not.

**B. Several Special Factors Weigh Strongly Against Creating An Implied Bivens Remedy In The New Context Of Plaintiff Hobbs' Claims**

Once a district court determines that a Bivens claim arises in a new context, the court must examine whether 'special factors' counsel hesitation in creating a new Bivens remedy. Abbasi clarifies what such 'special factors' are:

> This Court has not defined the phrase "special factors counselling hesitation." The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative."

137 S. Ct. at 1857-58.

**1. Alternative Remedies Were Available for Hobbs' Grievances**

The Defendants' moving papers explained that Hobbs had alternative avenues for relief within the Thailand criminal and civil justice systems. His Complaint alleges that he pursued those avenues for relief, including filing three civil actions in Thailand.

Hobbs' Opposition argues that these suits were not genuine alternative avenues for relief, because "Plaintiff Hobbs brought actions against the Royal Thai Police ("RTP") for its separate conduct, *which did not concern Defendant Devine*." (Opp. at 6) (emphasis original). To the contrary, however, Hobbs' Complaint repeatedly alleges that Hobbs' prosecution in Thailand was the product of *concerted action* between Devine and the RTP. Agent Devine did not arrest Hobbs, and he did not file criminal charges in Thailand against Hobbs. The Complaint explicitly alleges that "Plaintiff was subsequently prosecuted by the Royal Thai Police ("RTP") for allegedly having sex with two minor children." (Complaint, ¶ 9). The Complaint relentlessly attempts to tie Agent Devine's conduct to the RTP's conduct. Hobbs alleges that "in April of 2016, Plaintiff learned that Defendant RANDALL DEVINE had orchestrated the arrest and both

provided false information to the RTP and instructed the RTP to prosecute Plaintiff[]." (Complaint, ¶ 11). He repeatedly alleges that the RTP prosecuted him, but that it did so at Devine's "instruction." (Complaint, ¶¶ 11, 12, 15, 41, 44, 51, 55, 58). He claims that Agent Devine was "responsible for the investigation and prosecution of Plaintiff by the RTP." (Complaint, ¶ 41). Hobbs claims that "the RTP was acting with Defendant RANDALL DEVINE's assistance and at the instruction of Defendant RANDALL DEVINE." (Complaint, ¶ 44). He alleges that Agent Devine "approved the Thailand Attorney General's issuance of the Plaintiff's final non-prosecution order[]." (Complaint, ¶ 55), and contends that Agent Devine instructed RTP agents to erase or suppress evidence. (Complaint, ¶ 66). The Opposition's unsupported assertion that the RTP's conduct "did not concern Defendant Devine" is inconsistent with the operative pleading.

Likewise, the Complaint's allegations make clear that Hobbs sued the RTP for the same injury—an alleged malicious prosecution in Thailand—that he now seeks to recover for via filing a belated Bivens claim against Agent Devine. As Paragraph 65 of the Complaint states, "Plaintiff brought legal actions against the RTP in 2015, believing that the RTP was the cause of his injury, and not aware that the cause of his injury was of [*sic*] Defendants, including Defendant RANDALL DEVINE." Hobbs sued Parison Noja for false statements that he allegedly made to the RTP. (Complaint, ¶ 70(d)). Hobbs then "commenced a civil action against the RTP (while under the impression that his prosecution was occurring at the direction of the RTP)." (Complaint, ¶ 70(f)).

Having already lost all three of his Thailand civil suits, by which he sought to blame the RTP and Parison Noja for his Thailand criminal prosecution, Hobbs has now filed a fourth suit which he instead attempts to blame Agent Devine for that injury. A plaintiff does not lack an alternative avenue for relief because he cannot recover monetary damages from every entity that he might conceivably blame for some role in causing the injury. Plaintiffs are not guaranteed the right to recover a monetary award:

> Of course, administrative procedures or a habeas petition provides no avenue for monetary recovery, unlike a Bivens action. But there is no precedent

> suggesting that the unavailability of money is a factor that carries any weight in determining the expansion of a Bivens remedy. Rather, the emphasis is simply on the existence of an avenue to protect the right, not the method of protection that Congress or the Executive has chosen.

Gonzalez v. Hasty, 269 F. Supp. 3d 45, 61-62 (E.D.N.Y. 2017). Obviously, a habeas petition or an administrative procedure does not provide a direct monetary remedy against an individual federal officer, like a Bivens action does. But for purposes of assessing whether Bivens liability should be expanded to a new context, the alternative remedial processes question looks at whether there are other avenues for pursuing redress for the claimed injury, not just at whether those avenues will provide monetary remedies that are identical to a Bivens tort asserted against a federal agent.

      Here, Hobbs sued the entities that conducted the allegedly 'wrongful' malicious prosecution, seeking a monetary award in Thailand. That Hobbs was not able to directly sue Agent Devine for supposedly 'subverting' these Thai authorities—who allegedly acted at Devine's instruction—does not mean that Hobbs was not able to pursue relief under Thai law for the alleged malicious prosecution.

      Hobbs claims that "[t]he defendants made the same argument in *Swartz*, and it was rejected." (Opp. at 8). Hobbs' incorrect description of Swartz again illustrates why this case is very different. Swartz did not involve plural defendants. Agent Swartz was the only named defendant. The Swartz plaintiff could not pursue civil claims against anybody else, because the excessive use of force complained of consisted of the federal agent directly shooting the Mexican victim, with no foreign actors being involved in that injury. Furthermore, Mexican courts could not assert jurisdiction over agent Swartz, so no case of any kind could have been brought apart from suing in the United States. Here, Hobbs repeatedly sued Thai actors in Thai court, per his Complaint's allegations, seeking to recover for his injury from an alleged malicious prosecution. Presumably, Hobbs and his attorneys had grounds for proceeding in this manner, meaning Hobbs had available some defensible basis under Thai law for repeatedly suing the RTP for monetary relief, even if the actions were ultimately unsuccessful.

**2. Congressional Legislation Bars Tort Liability For Injuries That Federal Agents Cause Outside Of The United States.**

Another special factor militating against extending Bivens liability to a new context is whether Congressional activity indicates that Congress may not want tort liability to be expanded in that new context via judicial implication. See Abbasi, 137 S. Ct. at 1858. The Defendants' moving papers explained that Congress created an explicit statutory exception to the federal government's tort liability under the FTCA, barring "Any claim arising in a foreign country." 28 U.S.C. § 2680(k).

In response, Hobbs argues that Swartz held that this foreign country exception did not bar extending Bivens liability to its border control agent. (Opp. at 8-10). That is true, but Hobbs fails to address *how* the Ninth Circuit justified that conclusion relative to the facts of its case. The Ninth Circuit agreed that the application of foreign law to allegedly tortious acts by the United States would be problematic for a variety of reasons. See Swartz, 2018 WL 3733428, *10. The Ninth Circuit distinguished the Swartz facts as follows: "Allowing a *Bivens* cause of action here, however, does not implicate this concern **because it arises under only U.S. constitutional law and does not implicate Mexican substantive law or even Arizona choice-of-law provisions that could lead to the application of Mexican substantive law.**" Id. (emphasis added). In discussing the qualified immunity doctrine, the Swartz majority distinguished its 'excessive use of force' claim from Fourth Amendment precedent involving extraterritorial investigations, which, as the Ninth Circuit noted, tend to implicate foreign law:

> We recognize that on similar facts, the Fifth Circuit reached a contrary conclusion. But its reasoning was about the Fourth Amendment generally, including warrantless searches of those crossing the border and electronic surveillance of the border itself. The concerns in *Verdugo-Urquidez* were also specific to warrants and overseas operations. But this case is not about searches and seizures broadly speaking. Neither is it about warrants or overseas operations. It is about the unreasonable use of deadly force by a federal agent on American soil. Under those limited circumstances, there are no practical obstacles to extending the Fourth Amendment. Applying the Constitution in this case would simply say that American officers must not

> shoot innocent, non-threatening people for no reason. Enforcing that rule would not unduly restrict what the United States could do either here or abroad. So under the particular circumstances of this case, J.A. had a Fourth Amendment right to be free from the objectively unreasonable use of deadly force by an American agent acting on American soil, even though Swartz's bullets hit him in Mexico.

See id. at *4-5. Indeed, basing American constitutional claims on an allegedly wrongful foreign criminal prosecution—completely unprecedented in a Bivens context—would multiply the foreign law problems well beyond the simpler investigative conduct that the Ninth Circuit distinguished in Swartz.

The majority opinion in Swartz noted that "we do not dispute the dissent's suggestion that the presumption against the extraterritorial application of statutes suggests an analogous presumption against extraterritorial *Bivens* claims." Id. at *17. The majority held that presumption could be overcome where actions touched and concerned United States territory with sufficient force to displace the presumption. Id. But Hobbs' Complaint is not based on a mindless bullet that was fired, with no substantive involvement by any foreign nationals, at somebody standing in visible range mere feet across the American border. Hobbs claims he was injured by a complex criminal prosecution that the RTP brought against him. His present Complaint's attempt to entirely blame Devine for causing that prosecution, and for 'instructing' the RTP to pursue it, does not suffice to convert the RTP into the equivalent of a mindless metal bullet that was fired across the border, causing the instantaneous death of its victim.

The RTP itself was operating under Thai law, not American law. The Fourth Amendment does not ordinarily apply to acts by foreign authorities in foreign nations. See, e.g., U.S. v. Rose, 570 F.2d 1358, 1361 (9th Cir. 1978). "Ordinarily, the fourth amendment does not apply to arrests and searches made by foreign authorities in their own country and in enforcement of foreign law." U.S. v. Heller, 625 F.2d 594, 599 (5th Cir. 1980). Insofar as Hobbs maintains that his prosecution by the RTP was controlled by Devine in violation of the U.S. Constitution, it would necessarily raise the sort of

complex and convoluted questions of extraterritorial application of U.S. law that the Ninth Circuit distinguished in Swartz.

**3. Hobbs' Claims Raise Foreign Policy Concerns**

The Defendants' moving papers argued that the new context of Hobbs' Bivens claims raises significant foreign policy concerns, insofar as Hobbs alleges that FBI agents subverted and controlled Thai law enforcement authorities. In Opposition, Hobbs ignores his Complaint's actual allegations on this point, and asserts—without any citation to his own pleading—that "all plaintiff has alleged is that Defendant Devine continued to provide false information to Thai Officials—not that Devine undermined their authority." (Opp. at 10). Hobbs' Complaint tries to paint Devine as the mastermind, who controlled the Thai authorities, while Hobbs' opposition brief instead argues that Devine did nothing with any import for the relationship between Thai authorities and the U.S. government. But it can't be both, to suit Hobbs' convenience.

As discussed above, the Complaint continuously attempts to hold Devine responsible for controlling the RTP, asserting that "Defendant RANDALL DEVINE had orchestrated the arrest and both provided false information to the RTP and instructed the RTP to prosecute Plaintiff[]." (Complaint, ¶ 11). Hobbs repeatedly claims that the RTP acted at Devine's "instruction." (Complaint, ¶¶ 11, 12, 15, 41, 44, 51, 55, 58). He claims that Agent Devine was "responsible for the investigation and prosecution of Plaintiff by the RTP." (Complaint, ¶ 41). Hobbs claims that "the RTP was acting with Defendant RANDALL DEVINE's assistance **and at the instruction of Defendant RANDALL DEVINE**." (Complaint, ¶ 44) (emphasis added). He alleges that Agent Devine "approved the Thailand Attorney General's issuance of the Plaintiff's final non-prosecution order[]." (Complaint, ¶ 55), and contends that Agent Devine instructed RTP agents to erase or suppress evidence. (Complaint, ¶ 66).

By incorrectly asserting that he has merely alleged that Devine provided 'false information' to the RTP, Hobbs' opposition papers underscore the problem with his attempt to found Bivens claims on an ever-shifting alleged conspiracy between the FBI

and the RTP. From a foreign policy perspective, Hobbs' Complaint alleges a severely problematic relationship between the FBI and the RTP, essentially parroting popular conspiracy theories in which foreign law enforcement authorities function as shells that the FBI or CIA controls. "Matters touching on national security and foreign policy fall within an area of executive action where courts hesitate to intrude absent congressional authorization." Meshal, 804 F.3d at 426 (finding that judicial inquiry into such matters would raise separation of powers concerns that precluded extending Bivens liability).

Hobbs attempts to discount Meshal on this point by arguing that its holding paralleled the Fifth Circuit's holding in Hernandez, which Swartz then disagreed with. See Opp. at 10. But that is an incorrect description of these cases. The facts of Meshal were very different than the cross-border shootings of Hernandez or Swartz. Meshal involved an American citizen who "was apprehended by Kenyan authorities, in a joint U.S.-Kenyan-Ethiopian operation, and transported to Nairobi," where he was interrogated by Kenya's Criminal Investigation Department. 804 F.3d at 419. The FBI then interrogated the plaintiff. This raised significant foreign policy concerns for many reasons. One such reason was the implication that American agents had *orchestrated* the plaintiff's detention, interrogation, and torture by the foreign government actors:

> One of the questions raised by Meshal's suit is the extent to which Defendants orchestrated his detention in foreign countries. The Judiciary is generally not suited to "second-guess" executive officials operating in "foreign justice systems." And judicial intrusion into those decisions could have diplomatic consequences.

Id. at 427. Identical concerns are raised here. Hobbs' Complaint alleges a dramatic subversion of the RTP by FBI agents, despite his opposition brief's attempt to downplay those allegations. No similar facts were involved in Swartz, where the Ninth Circuit took pains to emphasize that its ruling was limited to a much less complicated factual scenario, which entirely lacked the "question" of whether foreign authorities had been subverted by American agents. Here, by contrast, Hobbs' Bivens claims fall squarely within the problems that Meshal identified for claims arising from foreign criminal

investigations that American agents allegedly participated in and controlled.

The Defendants' moving papers also pointed out that the extraterritorial nature of Hobbs' claims makes them unsuitable to a fair discovery process, particularly since Thailand is not a party to the Hague Evidence Convention. See Hernandez, 885 F.3d at 822 ("Extraterritoriality, moreover, involves a host of administrability concerns…"). In response, Hobbs argues that he may ultimately lose this case if he lacks sufficient documents and witnesses. (Opp. at 10). That entirely misses the point. Hobbs is not the only party affected by this problem; in fact he is much less affected by it than Agent Devine is. Hobbs is attempting to subject Agent Devine, who is based in Los Angeles, to Bivens claims based on Hobbs' arrest and prosecution by Thai authorities in Thailand. Agent Devine has no way to conduct full and fair civil discovery on what *actually happened in Thailand*. As a defendant, Agent Devine could not be required to accept that whatever Hobbs claims happened in Thailand was what happened. But no compulsory legal process would ensure Devine fair-and-full discovery with which to develop his opposing defense, including depositions of key Thai witnesses (which cannot be compelled in Thailand as part of an American lawsuit). Aggravating the unfairness, Hobbs has evidently had the opportunity to gather documents and testimony to support his own position, since he repeatedly litigated against the RTP in Thailand from 2014-15. But in being subjected to Bivens claims that Hobbs filed several years later in California, Agent Devine would have no equivalent opportunity to develop his defense. The unfair discovery situation militates against this Court creating a radical extension of Bivens liability via permitting Hobbs' novel claims to proceed against Agent Devine.

The Supreme Court has warned that "[i]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating that kind of remedy." Abbasi, 137 S. Ct. at 1848. Here, there are numerous sound reasons for thinking that Congress might doubt the efficacy and necessity of the novel Bivens remedies that Hobbs seeks.

## III. THE FOREIGN COUNTRY EXCEPTION OF 28 U.S.C. § 2680(k) BARS HOBBS' TORT CLAIMS AGAINST THE UNITED STATES BECAUSE THE ALLEGED INJURIES OCCURRED IN THAILAND

The United States has exercised its right to be substituted as the defendant for Hobbs' two California-law tort claims, which Hobbs' Complaint had originally pled against Devine as an individual [Dkt. No. 19]. These claims should be dismissed because the injuries complained of occurred in Thailand. See 28 U.S.C. § 2680(k). The libel/slander/defamation claim is independently barred by 28 U.S.C. § 2680(h).

In response, Hobbs' opposition does not contest that his state law claims must fail if the United States remains the defendant. Hobbs instead relies on his pending motion that attempts to challenge the certification and substitution of the United States. See Opposition at 11. For the reasons stated in the Defendants' opposition to Hobbs' motion [Dkt. No. 23], however, the substitution of the United States as defendant was valid, and Hobbs' motion fails to make an evidentiary showing that would suffice to overturn it. Accordingly, Hobbs' tort claims against the United States should be dismissed.

## IV. CONCLUSION

Plaintiff Hobbs' Complaint should be dismissed without leave to amend.

Dated: September 10, 2018

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

/s/ *Daniel A. Beck*
DANIEL A. BECK
Assistant United States Attorney

Attorneys for Defendants Randall Devine
And the United States of America